**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:11-cr-91-10 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| ERIC DUNCAN DERRICOATTE, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Now before the Court is the counseled motion of defendant Eric Derricoatte ("defendant" or "Derricoatte") to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 997 ["Mot."].) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 998 ["Opp'n"]), and Derricoatte has filed a reply. (Doc. No. 999 ["Reply"].) For the reasons that follow, Derricoatte's motion is GRANTED.

**I. BACKGROUND**

On March 8, 2011, Derricoatte and twenty-eight others were indicted in a drug conspiracy. (Doc. No. 1 (Indictment).) On July 11, 2011, pursuant to a plea agreement, Derricoatte entered a plea of guilty to Count One of the indictment, charging conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846. (7-11-2011 Minutes; Doc. No. 494 (Plea Agreement); Doc. No. 330 (Report and Recommendation to Adopt Guilty Plea ["R&R"]); Doc. No. 493 (Order Adopting R&R).)

In his plea agreement, the parties agreed that Derricoatte's base offense level before acceptance of responsibility was 22, but as a career offender, it would be 34. (Plea Agreement at 2427; (Presentence Investigation Report ["PSR"]) ¶ 15.) Mr. Derricoatte's criminal history was a category IV, but with his career offender designation, his criminal history became category VI. (PSR ¶ 55.) At the time he was sentenced, Derricoatte had two prior state F-4 convictions—a 2005 conviction for distribution of crack cocaine, and a 2007 conviction for selling or offering to sell crack cocaine—that qualified as predicate controlled substances offenses. (PSR ¶¶ 36, 55.)

After a three-level adjustment for acceptance of responsibility, Derricoatte's total offense level was 31 and with a criminal history category VI, his guidelines range was 188–235 months in prison. (PSR ¶ 86.) The parties agree that, without the career offender designation, Derricoatte's guidelines range would have been 46–57 months.[1] The Court departed downward one level based on its finding that the career offender guideline over-stated the seriousness of defendant's criminal history and, on October 14, 2011, the Court sentenced Derricoatte to a term of imprisonment of 168 months. (Doc. No. 597 (Judgment).) At the time of sentencing, the Court recommended that Derricoatte participate in a drug rehabilitation program. (Doc. No. 597 at 3042.) Derricoatte is currently serving his sentence at Elkton FCI and has a projected release of February 17, 2023. *See* https://www.bop.gov/inmateloc/ (last visited 9-14-2020).

On May 26, 2020, Derricoatte filed a *pro se* motion for a compassionate release due to COVID-19. (Doc. No. 988) The Court appointed counsel for Derricoatte, and counsel filed a supplemental motion on July 20, 2020. Derricoatte now argues that he is entitled to release

---

[1] Specifically, the parties agree that defendant's 2007 conviction would no longer qualify as a predicate offense because it was for selling *or offering to sell* controlled substances. *See United States v. Cavazos*, 950 F.3d 329, 336–37 (6th Cir. 2020) (holding that offenses that include "offers to sell" are attempts, which do not qualify as career-offender predicates under the sentencing guidelines).

2

...

because, under recent Sixth Circuit decisions interpreting the career-offender guidelines, he would no longer qualify as a career offender. He insists that he has already served more than five years longer than even the high end of a guidelines sentence that would be imposed if he were sentenced today. That fact, Derricoatte contends, when considered in the context of the global health crisis caused by COVID-19 and the difficulties of slowing the spread of the virus in the institutional setting, constitutes "extraordinary" and "compelling reasons" to warrant a reduced sentence under 18 U.S.C. § 3582(c). (Mot. at 5170.) Moreover, he notes that, since his incarceration, he married his fiancé. If released, he represents that he "has a stable residence and his wife's support." (*Id*. at 5181.)

On August 7, 2020, the Court conducted a telephonic conference with counsel. At the conclusion of the conference, the Court requested that counsel supplement the briefing with copies of Derricoatte's health and prison disciplinary records, and with any information regarding the current availability of the BOP's Residential Drug Abuse Program ("RDAP") at defendant's facility. (8-7-2020 Minutes.) Counsel has now supplemented the record. (*See* Doc. Nos. 1000–03[2].)

**II. DISCUSSION**

As the Court has previously noted in other cases, the sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington,* 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston,* 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross,* 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may

---

[2] To the extent that counsel has moved to supplement the record, those motions are GRANTED.

"reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act of 2018 ("FSA") amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the prisoner's facility, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

On April 13, 2020, Derricoatte sent a request to the warden of Elkton asking to be considered for early release from his sentence. The warden responded on April 23, 2020, denying his request. (Doc. No. 997-2 at 5185.) Because more than 30 days has expired since Derricoatte filed his request for a compassionate release with the warden, he has exhausted his administrative remedies. *See United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). The Court can, therefore, consider the merits of Derricoatte's supplemental motion.

There are three components to a compassionate release merits analysis: (1) whether extraordinary and compelling reasons warrant a reduction in sentence, as described by the United States Sentencing Commission; (2) whether the § 3553(a) factors—"to the extent that they are

4

applicable"—render the reduction inappropriate; and (3) whether defendant would be a danger to the public.

1. Extraordinary and Compelling Circumstances

The applicable policy statement issued by the United States Sentencing Commission, § 1B1.13 of the U.S.S.G., explains that extraordinary and compelling reasons may exist where the defendant is "suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). The Court also finds that U.S.S.G. § 1B1.13 cmt. n.1(D) applies in this case. That provision mandates that, "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other reasons enumerated in U.S.S.G. § 1B1.13 cmt. n.1.

While this section refers to a BOP determination, the Sentencing Commission's policy statement was not amended after the enactment of the FSA. Consequently, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release … because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, No. 89-CR-0655, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 447, 499 (S.D. Iowa 2019) (collecting district court cases)). Given this lack of applicable guidance, courts have held that they are not constrained by prior Commission policy statements as to what constitutes extraordinary and compelling reasons for a sentence reduction. *See United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (noting

5

that "a majority of district courts have concluded that the old policy statement provides helpful guidance, [but] … does not constrain [a court's] independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)") (quotation marks and citations omitted); *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.").

The Court agrees with district courts nationwide that have determined that, while the BOP criteria remain helpful guidance, a court has independent discretion to determine whether there are "extraordinary and compelling reasons" for release. In fact, this Court has previously joined other courts in holding that, given the difficulties of social distancing while incarcerated and the spread of COVID-19 in BOP facilities during the current pandemic, "extraordinary and compelling reasons" exist for purposes of § 3582(c)(1)(A) where an inmate suffers from medical conditions that place him at a higher risk of serious illness in the event he contracts COVID-19. *See, e.g., United States v. Spencer*, No. 1:15-cr-375, Doc. No. 70 (N.D. Ohio June 8, 2020); *see United States v. Jackson*, No. 5:02-cr-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020); *United States v. Bolze*, No. 3:09-cr-93, 2020 WL 2521273, at *7 (E.D. Tenn. May 13, 2020) (noting that "a defendant's medical condition could provide an extraordinary and compelling reason under § 1B1.13 n.1(A)(ii) if a defendant suffers from a chronic medical condition that the Centers for Disease Control has recognized as elevating the risk of becoming seriously ill from COVID-19").

But the government highlights the fact that Derricoatte does not have any risk factors identified by the Centers for Disease Control and Prevention ("CDC") that render him especially vulnerable to suffering serious complications should he contract COVID-19. (Opp'n at 5206.) Moreover, while medical records reveal that Derricoatte did contract COVID-19, the parties agree that he has since recovered from the virus. (*See* Doc. No. 1001-1 at 5222.) Given that Derricoatte has no risk factors associated with COVID-19, the Court finds that the existence of the virus, alone, is not enough to warrant a finding of extraordinary and compelling circumstances. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Derricoatte is not, however, relying on risk factors or the mere existence of the pandemic to support his release. Instead, he offers two arguments that he believes, in combination, satisfy the extraordinary and compelling reasons requirement. First, he argues that "because of the risks from COVID-19, and the restrictions BOP has imposed as a result—such as cancelling programs and limiting movement—Mr. Derricoatte's sentence is riskier and more severe than was understood when he was sentenced." (Mot. at 5175.) Second, he argues that "given subsequent changes in the law, Mr. Derricoatte is serving a drastically longer sentence than he would if he was [sentenced] today. Combined [he concludes], "these are extraordinary and compelling reasons to reduce his sentence to time served." (*Id.*)

Here, the parties agree that "if he were sentenced today, [Derricoatte] would not be classified as a career offender; meaning that his guideline range would not be 188–235 months, as it was when he was sentenced, but rather 46–57 months." (Opp'n at 5208.) While this fact alone would not support release, the Court finds that this sentencing disparity, along with the significant and unique changes in defendant's incarceration status since the pandemic, support a

7

compassionate release. In particular, the record demonstrates that while Derricoatte qualifies for participation in the BOP's RDAP, it is unclear whether he will be able to participate in and complete the program in time to earn a reduction in his sentence.

Eligible federal inmates may receive various incentives if they participate in drug treatment programs. 28 C.F.R. § 550.55. Under the RDAP—a BOP drug treatment program conducted at an inmate's institution—the BOP has discretion to grant an inmate a sentence reduction of up to one year if he qualifies for and successfully completes the program. *Id.*; *see* 18 U.S.C. § 3621(e)(2)(B). The program typically takes approximately 9 to 12 months to complete. Inmates must also successfully complete transitional classes during their time in a Residential Reentry Center ("RRC") in order to get up to 12 months off their sentence. (*See* Doc. No. 1003 at 5235.)

As one of the many unfortunate byproducts of the pandemic, programs like RDAP had been temporarily suspended to slow the spread of the virus. While RDAP has been restarted at defendant's facility, and notwithstanding the fact that Derricoatte is and remains qualified for the program, the record reflects that he was denied admission to the most recent session because other inmates on the qualified list at his institution have sooner release dates and were enrolled ahead of him. (*Id.*) It is unclear when Derricoatte will be admitted to RDAP, and whether he will be able to complete the program in time to take advantage of the credit incentives. The Court finds that this fact unique to Derricoatte's incarceration, when considered in conjunction with the reality that the amount of time he has already served in custody is over double a current guidelines sentence, constitutes an extraordinary and compelling reason justifying release.

To be clear, the Court finds no support for the position that a motion for a compassionate release can be employed as a means of collaterally attacking the legality of a sentence.[3] *See United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("Although the Court has discretion to determine what qualifies as an extraordinary and compelling reason, the Court believes that it would be both improper and inconsistent with the First Step Act to allow [defendant] to use 18 U.S.C. § 3582(c)(1)(A) as a vehicle for claiming legal wrongs, instead of following the normal methods of a direct appeal or a habeas petition."); *United States v. Williams*, No. 4:15-cr-37, 2019 WL 6529305, at *1 (E.D.N.C. Dec. 4, 2019) ("Motions for a sentence reduction under § 3582(c)(1)(A) are not substitutes for direct appeal or habeas corpus motions.") And in fact, Derricoatte makes clear that he "is not challenging his original sentence on legal grounds." (Reply at 5211.) He concedes that he was "properly determined to be a career offender under existing law when originally sentenced by this Court." (*Id*.) It is the fact that he is now serving a substantially longer sentence than he would under the law and advisory guidelines today, and he is doing so under circumstances where he may not be able to participate in a drug treatment program for which he qualifies and that would benefit him twofold: he would receive treatment for a substance abuse problem that began when he was 12 years old, and he would also qualify for a reduced sentence. It is this combination of factors, coupled with the lengthy sentence that he has already served, the programming that he has completed, and the stable home

---

[3] For this reason, the Court's ruling should not be interpreted as holding that any inmate who can demonstrate that his guidelines sentence would be different were he sentenced today has established extraordinary and compelling reasons for release under § 358.

environment that he represents is available, that warrants relief. *See, e.g., United States v. Badgett*, 3:06-cr-474-3, Doc. No. 289 at 1517 (N.D. Ohio July 31, 2020) (sentencing disparity, along with the fact that inmate had been assigned a work detail outside the prison, constituted individualized facts that supported release).

For these reasons, the Court finds that the unique circumstances surrounding Derricoatte's current incarceration constitute extraordinary and compelling reasons.

### 2. § 3553(a) Factors and the Danger to the Community

The Court finds that consideration of the relevant § 3553(a) sentencing factors also favor granting defendant's request for compassionate release. Derricoatte has been in federal custody since March 15, 2011. He has served over 114 months in prison and has maintained a respectable disciplinary record; his only recent infraction (occurring 16 months ago) involved an incident where he pushed a wheelchair bound inmate to another unit in which defendant did not have permission to be present. (Doc. Nos. 1001-2, 1002-3.) Before the pandemic, he also participated in extensive educational, vocational, and rehabilitative programming. (Doc. No. 997-1 at 5184.)

The Court acknowledges that Derricoatte's offense was indeed serious. The Court believes that the more than nine years he has already served adequately reflects the seriousness of his conduct and recognizes the need for deterrence, public safety, and respect for the law. But Derricoatte's continued incarceration is disproportionate to how the law would treat his offense today, and it is especially inequitable given that it is not certain that he would be able to take advantage of programming that would otherwise reduce his sentence and provide him with substance abuse treatment prior to his release—treatment that but for the pandemic would be afforded him. As the Court explained above, the time he has already served likely represents

twice the sentence (nearly five years more than) he would receive today. Moreover, while the Court does not wish to minimize defendant's drug trafficking convictions, there is little evidence that, after his more than nine-year custody term, the defendant would be a danger to the public. Additionally, as indicated previously, the Court finds that Derricoatte's positive programming while in prison, the prospect of his release to a stable residence with family support, and the post-release supervision and programming that the Court will require, will enable him to make a successful transition back into society.

Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), the Court finds that the § 3553(a) factors weigh in favor of reducing Derricoatte's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

III. CONCLUSION

For the foregoing reasons, Derricoatte's motion for a compassionate release is GRANTED and his sentence will be reduced to time served, followed by the six-year term of supervised release previously imposed. The terms and conditions of supervised release previously imposed when Derricoatte was originally sentenced will remain in place, and the following additional terms are also imposed:

1. **Home Confinement and Location Monitoring**: Defendant must be monitored by the form of location monitoring selected at the discretion of his probation officer for a period of up to fifteen (15) months, to commence immediately upon his release from the custody of the Bureau of Prisons. Defendant will be required to remain in his residence for the first thirty (30) days after his release. Thereafter, defendant will be required to remain in his residence unless given permission in advance by the probation officer to be elsewhere. After the first thirty (30) days, he may leave his residence to work and receive medical treatment and to attend religious services. He must consent to be monitored by location monitoring and must abide by all of the requirements established by the U.S. Pretrial Services & Probation Office related to the use of the location monitoring technology; and he must submit to random drug/alcohol tests as specified by the U.S. Pretrial Services & Probation Officer. Defendant may participate in the Discretionary Leave under terms set by the U.S. Pretrial Services & Probation Officer. He must pay the costs of participation in the location monitoring program based on his ability to pay, as directed by the U.S. Pretrial Services & Probation Officer;

2. **Cognitive Behavioral Treatment:** Defendant must participate in a cognitive-behavioral treatment program and follow the rules and regulations of that program. The probation officer will supervise defendant's participation in the program (provider, location, modality, duration, intensity, etc.);

3. **Alcohol Restriction:** Defendant must not use or possess alcohol;

4. **Substance Abuse Treatment and Testing:** Defendant shall participate in an approved program of substance abuse testing and/or outpatient or inpatient substance abuse treatment as directed by his supervising officer; and abide by the rules of the treatment program. The probation officer will supervise defendant's participation in the program (provider, location, modality, duration, intensity, etc.). The defendant shall not obstruct or attempt to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing;

5. **Mental Health Treatment:** Defendant must undergo a mental health evaluation and/or participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise defendant's participation in the program (provider, location, modality, duration, intensity, etc.); and

6. **Reentry Program:** The Court recommends, upon defendant's release from custody, that the defendant be considered for the reentry program in the Northern District of Ohio.

The Court shall stay defendant's release for a period of fourteen (14) days from the date of this order to permit the U.S. Probation Office to verify his residence and release plan, and to inspect the residence. If the residence is approved, then the U.S. Probation Office may install the monitoring equipment. During this 14-day period, defendant shall be kept in quarantine under conditions that will ensure that he is virus free when he is released. The defendant may not be released unless and until the U.S. Probation Office approves of his proposed residence. If the residence is not approved, then it will be the defendant's responsibility to propose an alternative qualifying residence.

Within 24 hours of release, the defendant shall initiate contact with the U.S. Probation Office in this District.

The Clerk of Court is directed to provide a copy of this Memorandum Opinion and Order to the U.S. Probation Office in this District.

**IT IS SO ORDERED**.

Dated: September 21, 2020

                                                  **HONORABLE SARA LIOI**
                                                  **UNITED STATES DISTRICT JUDGE**